J-A12017-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SAMANTHA JEAN SAVAGE, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ABBY A. JACOBSON, MS, PA-C A/K/A | : | No. 3907 EDA 2017 |
| ABRIN ARLENE JACOBSON | : | |

Appeal from the Judgment Entered October 23, 2017
In the Court of Common Pleas of Delaware County
Civil Division at No(s): 15-001881

BEFORE: BOWES, J., OTT, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OTT, J.:                    **FILED AUGUST 09, 2018**

Samantha Jean Savage ("Savage") appeals from the judgment entered October 23, 2017, in the Delaware County Court of Common Pleas, in favor of Abby A. Jacobson, MS, PA-C a/k/a Abrin Arlene Jacobson ("Jacobson"), in this negligence action. After the close of Savage's case-in-chief, the court granted Jacobson's motion for nonsuit. Savage raises four issues on appeal, challenging the court's rulings both before and during the jury trial, as well as its decision to grant Jacobson's motion for nonsuit. For the reasons below, we affirm.

The present action stems from a medical procedure performed on September 25, 2007, by Jacobson, then a physician's assistant at Aesthetic Dermatology Associates, P.C. Savage, who was then seven years old, was brought to Jacobson's office by her mother and grandmother for treatment of

"molluscum contagiosum, a condition that included small lesions or warts on the skin." Trial Court Opinion, 12/29/2017, at 2. The trial court summarized the testimony presented during the jury trial as follows:

> The testimony at trial established a conflict as to the factual events that occurred in [Jacobson's] office. [Mother] testified that after they had arrived in the office [Savage's] initial treatment was with nitrous oxide, but when [Savage] saw the smoke caused by this substance she became upset and it was determined that the procedure would proceed with the TCA [trichloracetic acid] treatment instead of nitrous oxide. [Mother] further testified that [] Jacobson applied the TCA to [Mother's] hand to show [Savage] that its application did not hurt and to help calm [Savage's] nerves. [Mother] stated that the instrument [] Jacobson used was similar to a Q-tip, which contained cotton on one end and an uncovered stick on the opposite end. The stick end was used on [Mother's] hand to demonstrate. [Mother] testified that after the demonstration, [] Jacobson proceeded to pour TCA into a cup–like container and used a Q-tip end for her daughter's treatment. During the course of the treatment, [Mother] sat on the table with her daughter and placed her onto her lap. [Mother] stated that during her daughter's stomach treatment, her daughter became upset. [Mother] claimed that as [Jacobson] proceeded to [Savage's] neck area for treatment, the TCA spilled. [Mother] testified on cross-examination that she did not see what caused the acid to spill. [] Jacobson washed [Savage's] face before [Savage] left the office.

> [Grandmother] testified that the Q-tip swab was really wet and drippy and dripped on [Savage's] stomach and that [Savage] reacted to it. She further testified that the liquid splashed out of the cup, but did not see where every drop had landed. [Grandmother] testified that she saw the cup of TCA in [] Jacobson's hand move and that she did not know if [Savage] or [] Jacobson jerked [Jacobson's] arm. [Grandmother] continued that she did not know how it happened, but he saw the acid splash out of the cup.

> [] Jacobson testified that she had previously treated [Savage] and that [Savage] had become upset during treatments and was referred to her for that reason. She claimed that she initially treated [Savage] with liquid nitrogen but stopped the

treatment because it hurt. [Jacobson] testified that she applied the TCA to [Mother's] hand to show [Savage] that it would not burn. [Jacobson] testified that she applies TCA on women's faces to get rid of wrinkles as part of a cosmetic treatment. [] Jacobson further testified that she started treating [Savage] when [Savage] suddenly started flailing, kicking, moving her arms and crying and that the applicator in her right hand was knocked out of her hand. [] Jacobson stated that she retrieved the application [sic], put it away, calmed [Savage] down and then treated [Savage] with ointment and gave her instructions. [] Jacobson denied that she had a cup of acid in her hand during the treatment.[1] [] Jacobson also testified that she applied the TCA with the stick end and not the Q-tip end for the treatment.

*Id.* at 5-7 (record citations omitted).

On February 27, 2015, Savage filed a complaint against Jacobson and Aesthetic Dermatology Associates, P.C., asserting claims of medical malpractice and ordinary negligence.[2] The claims against Aesthetic Dermatology were later dismissed by stipulation of the parties. **See** Stipulation, 3/28/2016. On May 30, 2017, Jacobson filed a motion in *limine* seeking to preclude testimony on the issue of the appropriate standard of care from Savage's proposed expert witness, Dr. Jeffrey Bomze. Specifically, Jacobson argued Dr. Bomze, a pediatrician, "does not practice dermatology and does not assert expertise in working with physician assistants." Motion In Limine, 5/30/2017, at ¶ 5. Savage did not file a response to the motion,

---

[1] Although during her deposition Jacobson denied she held a container of acid during the procedure, at trial, she testified she held the applicator in her right hand but could not recall if she had a container of the TCA in her left hand. **See** N.T., 6/20/2017, at 149, 151, 173.

[2] We note Savage attached to her complaint a certificate of merit pursuant to Pa.R.C.P. 1042.3(a).

but rather, on June 13, 2017, her attorney sent a letter to the trial court stating Savage would not be proceeding on the medical malpractice count in the complaint, and would "proceed on the ordinary negligence count, only." Motion for Compulsory Nonsuit, 6/16/2017, at Exhibit C, Letter dated 6/13/2017. Accordingly, on June 16, 2017, three days before trial, Jacobson filed a motion for a compulsory nonsuit, asserting that while Savage pled counts for medical malpractice and ordinary negligence, "the factual allegations have borne out through discovery that the only viable claim is medical malpractice." *Id.* at ¶ 5. Because Savage failed to file a timely response to Jacobson's motion in *limine*, and, in fact, indicated she would not be calling an expert witness, Jacobson asserted the "case must fail as a matter of law[.]" *Id.* at ¶ 11.

On the morning of the first day of trial, Savage filed both an (untimely) answer to Jacobson's motion in *limine*, and preliminary objections to the motion for compulsory nonsuit. The court proceeded to hear argument on both motions. Savage's attorney first insisted that, regardless of the letter he sent to the court on June 13th, he did not waive his right to object to Jacobson's motion in *limine* or present an expert at trial. *See* N.T., 6/19/2017, at 6. Furthermore, counsel clarified he still intended to present a medical malpractice claim at trial, although he acknowledged his expert would not be available for the next couple of days. *See id.* at 9-10. Savage's attorney maintained the first issue the court had to determine was whether he was precluded from presenting his expert witness based on the motion in *limine*.

*See id.* at 9. After taking a brief recess, the court denied the motion in *limine*. *See id.* at 12. Consequently, Savage was **not** precluded from presenting a medical expert at trial.

Next, the trial court considered Jacobson's motion for compulsory nonsuit. Jacobson's attorney emphasized to the court that: (1) Savage's counsel stated he would not be able to produce his expert in time for trial; (2) the facts of the case did not support a *res ipsa loquitur* argument; and (3) the court had to decide if Savage could proceed with a medical malpractice and/or general negligence claim. *See id.* at 12-16. In response, Savage's attorney insisted the motion was premature since a compulsory nonsuit is available only after a plaintiff presents her case-in-chief. *See id.* at 18. After another brief recess, the trial court denied the motion for a nonsuit. Although the court permitted Savage to proceed on both counts in the complaint, it stated "both of those counts sound in medical negligence," and left the decision up to Savage whether or not to proceed with an expert. *Id.* at 23.

The jury trial began that same day. Savage presented the testimony of her mother and grandmother, testified as to her own recollection of the incident, and called Jacobson as on cross-examination. She did not present expert testimony before resting her case. At the conclusion of Savage's case-in-chief, Jacobson renewed her motion for a nonsuit. The trial court granted the motion on June 21, 2017. Savage filed a timely post-trial motion, and the court held a hearing on September 14, 2017. Thereafter, on October 16,

2017, the trial court denied Savage's motion for post-trial relief. This timely

appeal followed the entry of judgment on October 23 2017.[3]

When considering a trial court's refusal to remove a nonsuit, we are

bound by the following well-established standard of review:

> Nonsuit is properly entered where it is clear that the plaintiff has not established a cause of action or right to relief. Pa.R.C.P. 230.1. In determining whether the plaintiff has established a right to relief,
>
>> [t]he plaintiff must be allowed the benefit of all favorable evidence and reasonable inferences arising therefrom, and any conflicts in the evidence must be resolved in favor of the plaintiff. Further, [i]t has been long settled that a compulsory nonsuit can only be granted in cases where it is clear that a cause of action has not been established. However[,] where it is clear a cause of action has not been established, a compulsory nonsuit is proper. We must, therefore, review the evidence to determine whether the order entering judgment of compulsory nonsuit was proper.
>
> **Braun v. Target Corp.,** 983 A.2d 752, 764 (Pa.Super.2009). "This Court will reverse an order denying a motion to remove a nonsuit only if the court abused its discretion or made an error of law." **Brinich v. Jencka**, 757 A.2d 388, 402 (Pa.Super.2000).

**Staiger v. Holohan**, 100 A.3d 622, 624 (Pa. Super. 2014).

For ease of disposition, we will address Savage's third issue first.

Therein, Savage maintains the trial court erred when it "declared" that she

must proceed with her case as a medical malpractice action, and not as one

sounding in ordinary negligence. Savage's Brief at 25. She emphasizes she

---

[3] On November 6, 2017, the trial court ordered Savage to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Savage complied with the court's directive, and filed a concise statement on November 27, 2017.

pled two counts against Jacobson in her complaint – one sounding in medical malpractice and one sounding in ordinary negligence – and pled sufficient facts to bring a claim of ordinary negligence against Jacobson. Savage asserts the trial court's ruling in this case "basically removed ordinary negligence as a viable cause of action against any doctor, hospital, or other medical provider." *Id.* at 29.

Preliminarily, we note the trial court disputes Savage's contention that it precluded her from proceeding on an ordinary negligence claim at trial, and the record supports the court's assertion. **See** Trial Court Opinion, 12/29/2017, at 7-8. As noted *supra*, the trial court denied both Jacobson's motion in *limine*, and her pretrial motion for a nonsuit. Further, the court specifically declined to dismiss either count in Savage's complaint, although it stated both the medical malpractice and ordinary negligence claims "sound[ed] in medicine and medical treatment." N.T., 6/19/2017, at 24. It was Savage's choice to proceed without medical expert testimony, which, as will be discussed *infra*, was her downfall.

Savage also contests the court's determination that both counts in her complaint sounded in medical malpractice. Regarding this issue, the court stated:

> While [Savage's] counsel sought to escape providing medical testimony in this case by claiming that the matter was one of ordinary negligence, an examination of the complaint revealed otherwise. The pleadings of both counsel sounded in medical negligence and both counts claimed negligence in the medical treatment of [Savage].

- 7 -

*Id.* at 8.

In ***Grossman v. Barke***, 868 A.2d 561 (Pa. Super. 2005), *appeal denied*, 889 A.2d 89 (Pa. 2005), a panel of this Court clarified the averments a plaintiff makes in her complaint determines her theories of liability. ***See id.*** at 568. The ***Grossman*** Court explained:

> The underlying elements of negligence in a medical malpractice claim, mirroring those of a basic negligence claim, are more specifically described as a "duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of the harm."
>
> One of the most distinguishing features of a medical malpractice suit is, in most cases, the need for expert testimony, which may be necessary to elucidate complex medical issues to a jury of laypersons. In other words, "[b]ecause the negligence of a physician encompasses matters not within the ordinary knowledge and experience of laypersons[,] a medical malpractice plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury."
>
>> The expert testimony requirement in a medical malpractice action means that a plaintiff must present medical expert testimony to establish that the care and treatment of the plaintiff by the defendant fell short of the required standard of care and that the breach proximately caused the plaintiff's injury. Hence, causation is also a matter generally requiring expert testimony.
>
> Indeed, "a jury of laypersons generally lacks the knowledge to determine the factual issues of medical causation; the degree of skill, knowledge, and experience required of the physician; and the breach of the medical standard of care." In such cases, "[t]he cause and effect of a physical condition lies in a field of knowledge in which only a medical expert can give a competent opinion .... [Without experts] we feel that the jury could have no basis other than conjecture, surmise or speculation upon which to consider causation."

- 8 -

*Id.* at 566-567 (internal citations omitted). However, the ***Grossman*** panel acknowledged expert testimony is not always required in a medical malpractice case, as, for instance, when "the alleged negligence is obvious or within the realm of a layperson's understanding." *Id.* at 567.

Drawing upon that precept, Savage insists expert testimony was unnecessary in her case because Jacobson testified that "she knew the use of acid ... would likely cause inflammation and she admitted that an inadvertent act on her part could have caused the acid to drip onto the stomach of [Savage]." Savage's Brief at 27. Indeed, Savage analogizes her claim to one in which a plumber, using acid to clear a drain, walks near a child and inadvertently spills acid on the child. *See id.* at 26. She avers "[b]oth acts are identical and neither one requires any medical expertise [to] come to the conclusion that there was negligence on the part of the adult." *Id.* at 27.

We find Savage's analogy misplaced. As the trial court noted in its opinion, "[b]oth the ordinary negligence claim and the medical malpractice claim against [Jacobson] arose from the medical treatment of [Savage]." Trial Court Opinion, 12/29/2017, at 11. Indeed, Savage averred the incident took place in Jacobson's office, where she "held herself out to the public as an expert medical care provider in the area of dermatology, dermatologic surgery, and associated treatments." Complaint, 2/27/2015, at ¶ 8. With regard to the ordinary negligence count, Savage averred Jacobson was negligent for using TCA on a minor child absent, *inter alia*, taking proper precautions, adopting policies regarding the use of acid on a minor, and using

- 9 -

reasonable care. *See id.* at ¶ 53(a), (c), and (d). Further, she asserted Jacobson was negligent for "failing to properly apply the acid" and "generally acting in a negligent, careless and reckless manner by applying [TCA] to the body of a seven year old girl[.]" *Id.* at ¶ 53(e), (g). Here, the facts averred in Savage's complaint (and testified to during trial) demonstrate that Savage was injured while undergoing a medical procedure performed by Jacobson, in her capacity as a physician's assistant. Whether or not Savage could prove her claim absent expert testimony is a separate question. We have no hesitation in finding the trial court properly construed Savage's claim to be one of medical malpractice.

Next, we will consider Savage's first two issues. Savage contends the trial court erred when it determined she could not invoke the doctrine of *res ipsa loquitur* to establish her negligence claim. *See* Savage's Brief at 16. Further, she insists in making that determination, the court also erred when it considered whether her own conduct, as a seven-year-old patient, could have been responsible for her injuries, when the law states, "[a] child between the ages of 7 and 14 years of age is presumed incapable of negligence." *Id.* at 24.

The doctrine of *res ipsa loquitur* permits an inference that harm suffered by a plaintiff was caused by the defendant's negligence when:

> (a) the event is of a kind which ordinarily does not occur in the absence of negligence;
>
> (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

- 10 -

> (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

Restatement (Second) of Torts § 328D(1) (1965). Furthermore, "[it] is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn." *Id.* at § 328(D)(2).

Although a medical malpractice action usually requires expert testimony,[4] the doctrine of *res ipsa loquitur* may be invoked by a plaintiff, obviating the need for an expert, "in instances of obvious negligence, *i.e.*, circumstances in which the medical and factual issues presented are such that a lay juror could recognize negligence just as well as any expert." *Fessenden v. Robert Packer Hosp.*, 97 A.3d 1225, 1230 (Pa. Super. 2014), *appeal denied*, 113 A.3d 280 (Pa. 2014). *See id.* (inference of negligence under *res ipsa loquitur* doctrine warranted where a sponge was left in patient's abdomen following surgery); *Quinby v. Plumsteadville Family Practice, Inc.*, 907 A.2d 1061 (Pa. 2006) (plaintiff was entitled to inference of negligence under *res ipsa loquitur* doctrine when quadriplegic patient, who was left alone, fell off examination table; there was nothing to explain the fall, and "[g]iven [plaintiff's] full-body paralysis, all agree there was no way he could have been responsible for his fall.").

---

[4] "With all but the most self-evident medical malpractice actions there is [a] requirement that the plaintiff must provide a medical expert who will testify as to the elements of duty, breach, and causation." *Quinby v. Plumsteadville Family Practice, Inc.*, 907 A.2d 1061, 1070–1071 (Pa. 2006).

Here, the trial court concluded "the inference of *res ipsa loquitur* could not reasonably have been drawn by the jury[.]" Trial Court Opinion, 12/29/2017, at 15. The court opined:

> Unlike, for example, when a surgical sponge is left in a patient's body following surgery, the jury in this matter is left to guess as to what caused the acid to spill as to the applicable standard of care. How is the jury to know how the TCA should be handled? How is the jury to know what strength the acid was and whether that strength called for a certain handling of the TCA? What instrument should be used to apply it? What distance should [Jacobson] have been from [Savage]? What type of container should have been used? Was this a substance known to cause burns or a substance that is commonly used during facials? Did [Jacobson] adhere to the standard of care in reacting to [Savage's] poor tolerance for the procedure? There was no ability of the jury in this case to have [] completely understood the medical procedure without an expert. [Savage] would have liked the jury to infer that TCA must have been a highly dangerous solution and that [Jacobson] must not have handled it properly. However, this Court cannot permit such speculation. The use of an expert would have established the exact nature of the TCA and the standard of care to which [Jacobson] was required to adhere. Even if the jury could infer causation without expert testimony, a jury of laypersons lacked the knowledge to determine the degree of skill required of [Jacobson] and that there was a breach of a medical standard of care. The alleged negligence is not obvious, or so simple that ordinary experience would allow a jury to make such a determination without conjecture.

*Id.* at 15-16.

In addition, the court found Savage "failed to establish that other responsible causes were sufficiently eliminated by the evidence[,]" including the conduct of Savage herself or her mother, who was restraining her. *Id.* at 16. The court explained that although there was testimony the acid and/or applicator was knocked out of Jacobson's hand during the procedure, no

witness could state what caused that to happen. *See id.* at 17-18. Indeed, the court found Savage's injuries "could have been caused without any negligence on the part of [Jacobson]." *Id.* at 16. Accordingly, the trial court determined Savage "did not satisfy the necessary factors under the Restatement to proceed under the doctrine of *res ipsa loquitur*." *Id.* at 18.

Savage insists, however, the trial court ignored "three salient facts[]:" (1) the proof that TCA is a "highly dangerous solution," as evident by the permanent scars on Savage's body; (2) Jacobson's admission that she "brought a glass bottle of acid in close proximity to a seven year old little girl, who she knew from previous encounters was terrified of the process[;]" and (3) Savage could establish Jacobson's negligence "totally by circumstantial evidence" and her burden of proof was only "by a fair preponderance of the evidence." Savage's Brief at 17-19. Furthermore, Savage argues the trial court improperly focused on "how the acid spilled," when "[t]he real question which was ignored by the trial judge, should include whether it was negligence for [Jacobson] to carry a glass bottle of TCA over to a seven year old girl who was already scared and upset, in the first place." *Id.* at 19-20.

We find no error on the part of the trial court in concluding that the facts of this case do not support an inference of negligence under the *res ipsa loquitur* doctrine. Although Savage focuses on her young age at the time of the incident, she ignores the fact that Jacobson was performing a **medical procedure** when the "dripping" occurred. Moreover, although acid might be considered a dangerous solution when used in other circumstances, here, the

TCA was used for a medical procedure in a medical office.[5]  Indeed, Savage's mother testified the dermatologist had performed the acid treatment on Savage during a prior visit.  *See* N.T., 6/20/2017, at 10.  Therefore, we agree with the trial court it was critical for Savage to provide expert testimony to determine whether the use of TCA to treat molluscum contagiosum on a seven-year-old was medically proper, and whether Jacobson's protocol – assuming, *arguendo*, she used the cotton end of the Q-tip stick to apply the acid, and held a bottle of acid in her other hand – was appropriate under the relevant standard of care.  Jacobson's admission that "[a]nytime you apply an acid … to the skin" it will cause "inflammation,"[6] is not proof that her use of TCA for a medical procedure was negligent.  Accordingly, without expert testimony, we find Savage failed to establish the first prong of the *res ipsa loquitur* doctrine, that is, "the event is of a kind which ordinarily does not

_____

[5] We note Savage also refers to the Restatement of Torts (First) § 835, comment i, which she claims "sets forth the 'highest duty of care' standard" when a person engages in an "inherently dangerous activity," as well at the accompanying suggested standard jury instruction.  Savage's Brief at 20-21, *citing* Pa. SSJI (Civ) § 13.90 (2013).  However, the comment specifically states:  "[t]he liability stated in this Section extends only to harm to another's interests in **the use and enjoyment of land** resulting from the dangerous character of the activity and caused by the independent contractor's failure to exercise reasonable care to prevent it."  Restatement (First) of Torts § 835 (1939), Comment I (emphasis supllied).  Accordingly, it is not applicable to the facts herein.

[6] N.T., 6/20/2017, at 170.

occur in the absence of negligence[.]" Restatement (Second) of Torts § 328D(1)(a).

Moreover, we also agree with the trial court's determination that Savage failed to establish the second prong of the *res ipsa loquitur* test, *i.e.*, that "other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence[.]" *Id.* at § 328D(1)(b). *See* Trial Court Opinion, 12/29/2017, at 16-18.

Savage insists that because a seven-year-old child cannot be contributorily negligent, the trial court erred when it found her actions could have caused the accident. *See* Savage's Brief at 24-25. Moreover, she insists she "only flailed in pain after [Jacobson] spilled acid on [her] stomach." *Id.* at 25.

Savage correctly states that the negligence of a minor, who is between the ages of seven and 14, is judged by a different standard than that of an adult.

> Both an adult and a minor are under an obligation to exercise reasonable care; however, the 'reasonable care' required of a minor is measured by a different yardstick—it is that measure of care which other minors of like age, experience, capacity and development would ordinarily exercise under similar circumstances. In applying that yardstick, we place minors in three categories based on their age: minors under the age of seven years are conclusively presumed incapable of negligence; minors over the age of fourteen years are presumptively capable of negligence, the burden being placed on such minors to prove their incapacity; minors between the ages of seven and fourteen years are presumed incapable of negligence, but such presumption is rebuttable and grows weaker with each year until the fourteenth year is reached.

- 15 -

***Kuhns v. Brugger***, 135 A.2d 395, 401 (Pa. 1957) (footnotes omitted).

Here, the trial court did not conclude Savage was contributorily negligent in causing the accident. Rather, the court found that, under the *res ipsa loquitur* standard, the evidence presented by Savage did not sufficiently eliminate **the conduct of others**, including Savage (in flailing about) or her mother (in attempting to restrain her), as a cause of the accident. Indeed, both Mother and Grandmother testified that they did not see what caused the spill,[7] and Jacobson testified that Savage, herself, knocked the applicator out of her hand when she "started flailing, kicking, [and] moving her arms." N.T., 6/20/2017, at 173. We agree with the court's interpretation that while a seven-year-old minor is presumed incapable of negligence, her conduct may be considered in determining whether the doctrine of *res ipsa loquitur* applies. Further, even if we did not consider Savage's conduct, the testimony at trial did not eliminate the possibility that Mother may have bumped Jacobson's arm and caused the spillage. Accordingly, we agree with the conclusion of the trial court that the facts of this case did not support an inference of negligence under the *res ipsa loquitur* doctrine, and Savage was required to provide expert testimony on the appropriate standard of care to prove Jacobson's liability.

In her final issue, Savage insists the trial court erred when it granted Jacobson's oral motion for a nonsuit because the court did not view the

---

[7] ***See*** N.T., 6/20/2017, at 18, 82-83.

evidence under the proper standard, that is, in a light most favorable to her, as the plaintiff.  **See** Savage's Brief at 30.  Our review of the record reveals this particular argument, implying the trial court reviewed Jacobson's motion under an incorrect standard of review, was not raised in either Savage's post-trial motion or her concise statement.  **See** Motion for Post Trial Relief, 7/3/2017, at ¶¶ 19-29; Concise Statement of Matters Complained of on Appeal, 11/27/2017, at ¶ D.  Rather, Savage's argument concerning the granting of the nonsuit focused on her insistence that she was entitled to an inference of negligence under the *res ipsa loquitur* doctrine, a claim we have already found to be meritless.  **See id.**  Accordingly, we conclude Savage's final argument is waived for our review.  **See Crespo v. Hughes**, 167 A.3d 168, 181 (Pa. Super. 2017) (issue not included in post-trial motion is waived for appeal purposes), *appeal denied*, 184 A.3d 146 (Pa. 2018); Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement … are waived.").

Therefore, finding Savage is entitled to no relief, we affirm the judgment entered in favor of Jacobson.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/9/18

- 17 -